**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-62403-ALTMAN/Strauss**

**JORGE GONZALEZ**,

     *Plaintiff,*

*v.*

**SEABEST, INC.**,

     *Defendant.*

_____/

**ORDER ADOPTING  IN PART REPORT AND RECOMMENDATION**

Our Defendant—Seabest, Inc.—has filed a Motion for Summary Judgment (the "MSJ") [ECF No. 25], which we referred to U.S. Magistrate Judge Jared M. Strauss, *see* January 23, 2024, Paperless Order [ECF No. 36]. Magistrate Judge Strauss recommended that we grant the MSJ "to the extent that Defendant has conclusively established as a matter of law that it did not owe Plaintiff a duty to warn about the dangerous condition in the back of its truck," but he suggested that we deny the MSJ "in all other respects." Report and Recommendation ("R&R") [ECF No. 37] at 13. Magistrate Judge Strauss also warned the parties as follows:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.

*Ibid.* (first citing 28 U.S.C. § 636(b)(1); then citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985); then citing *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); and then citing 11th Cir. R. 3-1).

Both parties filed timely objections to the R&R, *see* Defendant's Objections to the R&R ("Def.'s Objs.") [ECF No. 40]; Plaintiff's Objections to the R&R ("Pl.'s Objs.") [ECF No. 41], and

timely responses to those objections, *see* Plaintiff's Response to Defendant's Objections ("Pl.'s Objs. Resp.") [ECF No. 42]; Defendant's Response to Plaintiff's Objections ("Def.'s Objs. Resp.") [ECF No. 43]. After careful review, we **OVERRULE** both parties' objections, **ADOPT in part** Magistrate Judge Strauss's R&R, and **GRANT in part** and **DENY in part** the Defendant's MSJ [ECF No. 25].

## THE FACTS[1]

Our Defendant is a New York-based seafood business that "purchases fish from other countries and delivers the fish, once processed, to customers in Miami." Defendant's Statement of Material Facts ("DSMF") [ECF No. 26] ¶¶ 2–3; *see also* Plaintiff's Response to DSMF ("Pl.'s Resp. to DSMF") [ECF No. 29] ¶¶ 2–3 (undisputed). Our Plaintiff was an "independent contractor[ ]" working as a delivery driver for the Defendant. DSMF ¶ 4; Pl.'s Resp. to DSMF ¶ 4 (undisputed). During the period in question, four individuals worked for the Defendant in Miami: "office manager" Claudia Venturo; "sales manager" Yamilet Bellido De Luna; and "driver[s]" Yosmel Veloz[2] and Jorge Gonzalez. Deposition of Seabest's Miami Office Manager Claudia Venturo ("Venturo Depo.") [ECF No. 26-1] at 46:7–21; *see also* Pl.'s Resp. to DSMF ¶ 3 (citing favorably this portion of the Venturo

---

[1] "The facts are described in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox v. Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering the Defendant's MSJ, then, we describe the facts in the light most favorable to the Plaintiff and rely on the Defendant's Statement of Material Facts ("DSMF") [ECF No. 26] *only* where the Plaintiff has failed to genuinely dispute a proposition the Defendant has asserted there, *see* S.D. FLA. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under FED. R. CIV. P. 56 does not apply.").

[2] The parties occasionally misspell this man's name as "Velos." We've corrected the spelling in this Order.

deposition). The drivers—Veloz and our Plaintiff—were "independent contractors." DSMF ¶ 4; Pl.'s Resp. to DSMF ¶ 4 (undisputed). The trucks the Plaintiff and Veloz drove while making their deliveries belonged to the Defendant. *See* DSMF ¶ 4 ("To transport its fish, [the Defendant] retains independent contractors, like the Plaintiff, to drive *its* two trucks." (emphasis added)); Pl.'s Resp. to DSMF ¶ 4 (undisputed).

Before delivery, "a third-party processing company named Rank [would] process[ ] and handle[ ] the fish at the Rank facility." DSMF ¶ 5; Pl.'s Resp. to DSMF ¶ 5 (undisputed). Rank personnel would "unload[ ]," "ic[e]," and "compil[e]" the fish into "boxes and pallets" and then "load[ ]" them into the Defendant's trucks so that its drivers could begin their deliveries. DSMF ¶ 5; Pl.'s Resp. to DSMF ¶ 5 (undisputed). The Defendant's "two trucks [would be] parked and stored at the Rank facility." DSMF ¶ 6; Pl.'s Resp. to DSMF ¶ 6 (undisputed). "Each morning while loading Defendant's trucks, Rank employees [would] poke[ ] holes in the boxes of fish to prevent spoilage, which [would] cause[ ] blood and ice to accumulate on the floor of the truck throughout the day." DSMF ¶ 7; Pl.'s Resp. to DSMF ¶ 7 (undisputed). The Defendant was "aware" that Rank employees would poke holes in the boxes to "allow the drainage of water and blood onto the floor" of the trucks. Plaintiff's Statement of Material Facts ("PSMF") [ECF No. 29] ¶ 4; Defendant's Reply to PSMF ("Def.'s Reply to PSMF") [ECF No. 33] ¶ 4 (undisputed). The Plaintiff would "occasionally load[ ] boxes of fish into the truck rear himself or observe[ ] Rank employees load the boxes into the truck rear." DSMF ¶ 8; Pl.'s Resp. to DSMF ¶ 8 (undisputed).

The Defendant "purchased the truck at issue in this case new and custom to its specifications; it has had no modifications since it was purchased." PSMF ¶ 5; Def.'s Reply to PSMF ¶ 5 (undisputed). "The [Defendant's] truck at issue in this case does not have any drainage system." PSMF ¶ 6; Def.'s Reply to PSMF ¶ 6 (undisputed). The Defendant "had no regular or routine inspections of the truck bed at issue in this case." PSMF ¶ 7. The "Plaintiff expert, Brooks Rugemer, has opined that [the

Defendant's] flooring on the subject truck was inadequate for its intended purpose and therefore created a dangerous condition." *Id.* ¶ 8. "[The Defendant] had noticed that another driver, Yosmel Veloz, had slipped and fallen in the back of the truck prior to the subject fall of [the Plaintiff]." *Id.* ¶ 9; *see also* Yosmel Veloz Affidavit [ECF No. 31-1] ("On several occasions, I slipped and fell inside the truck. I notified Claudia Venturo of these falls and informed her about the slippery floor. They never did anything about it.").

"As part of the delivery process, Plaintiff would walk into the back of the truck to unload the boxes of fish at their respective destinations." DSMF ¶ 9; Pl.'s Resp. to DSMF ¶ 9 (undisputed). "Throughout the day as he delivered boxes of fish, Plaintiff rearranged the remaining boxes . . . in the back of the truck as necessary." DSMF ¶ 10; Pl.'s Resp. to DSMF ¶ 10 (undisputed). The Plaintiff "knew that there would always be blood and water on the floor of the truck during his afternoon deliveries." DSMF ¶ 11; Pl.'s Resp. to DSMF ¶ 11 (undisputed).

On January 21, 2021, the Plaintiff "slipped on the blood and water that had accumulated on the floor of the truck." DSMF ¶ 21; Pl.'s Resp. to DSMF ¶ 21 (undisputed). Seeking redress, the Plaintiff filed a complaint in Florida state court, alleging that the Defendant's negligence caused his injuries. *See* Complaint [ECF No. 1] at 8–11. In that single-count complaint, the Plaintiff asserted that the Defendant breached its duty by (1) "[f]ailing to provide a safe working space for [Plaintiff]"; (2) "[f]ailing to warn [Plaintiff] of the dangerous condition that [Defendant] knew or should have known of (e.g., failing to use or provide adequate hazard warning signs, etc.)"; (3) "[f]ail[ing] to provide adequate safety measures (e.g., a non-slip/non-skid cargo bed flooring, adequate and proper drainage, etc.)"; (4) "[f]ailing to maintain its vehicle in a safe condition"; (5) "[f]ailing to use appropriate materials

or hazard mitigation within the delivery vehicle, and working areas within the vehicle"; and (6) "[o]ther

acts of negligence to be determined through discovery." *Ibid.*[3]

The Defendant removed the case here, asking us to exercise our diversity jurisdiction under

28 U.S.C. § 1332(a), because the Plaintiff is a citizen of Florida, the Defendant is a citizen of New

York, and the amount in controversy exceeds $75,000. *See* Notice of Removal [ECF No. 1] ¶ 5. The

Defendant answered the Complaint on January 3, 2023, *see generally* Answer [ECF No. 4], and (after

the close of discovery) filed its MSJ. As we've said, Magistrate Judge Strauss recommended that we

grant in part and deny in part that MSJ, *see generally* R&R, and both sides have filed timely objections,

*see generally* Def.'s Objs.; Pl.'s Objs. This Order follows.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been

properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of

review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review

---

[3] By shoehorning multiple theories of negligence into a single count, the Plaintiff filed a shotgun pleading. *See Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (describing a shotgun pleading as a complaint that "(1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) *fails to separate into a different count each cause of action*; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act" (emphasis added)). Normally—when faced with a shotgun pleading—a defendant will file a motion to dismiss, which the court will grant. *See, e.g., Peraza v. Portfolio Recovery Assocs., LLC*, 2019 WL 13234107, at *3 (S.D. Fla. May 13, 2019) (Moreno, J.) (granting a motion to dismiss on the grounds that the plaintiff filed "an impermissible shotgun pleading"); *Julisa, LLC v. Avers*, 2020 WL 13267753, at *8 (S.D. Fla. Nov. 4, 2020) (Altonaga, J.) (granting in part a motion to dismiss because the plaintiff had pled multiple claims "together within a single count, in violation of federal pleading standards"); *Guillaume v. United States*, 2024 WL 915267, at *3 (S.D. Fla. Mar. 4, 2024) (Altman, J.) (granting a motion to dismiss on shotgun-pleading grounds and thus "declin[ing] to delve into its merits"). But our Defendant *didn't* file a motion to dismiss. Instead, it answered the Complaint. *See generally* Docket. And over the course of the subsequent briefing on the MSJ and the R&R, the Defendant still has not raised shotgun-pleading concerns. *See generally ibid.* There's thus "no indication" that our Defendant "lacks notice of the claims against it[.]" *Mayer v. Carnival Corp.*, 2024 WL 1759145, at *7 (S.D. Fla. Apr. 24, 2024) (Altman, J.) (cleaned up). We therefore will not *sua sponte* strike the Plaintiff's claims on shotgun-pleading grounds at this (very) late stage of the case.

only where objections have been properly filed—and not when neither party objects. *See Thomas*, 474 U.S. at 150 ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). "Those portions of a magistrate judge's report and recommendation to which no objection has been made are reviewed for clear error." *Ibid.*

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (cleaned up) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In ruling on a motion for summary judgment, we "need consider only the cited materials, but [we] may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."). In any event, on summary judgment, we must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, then, if there are any genuine issues of material fact, we must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, we must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fam.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

### THE OBJECTIONS

In its MSJ, the Defendant advanced three arguments.

*First*, it argued that it didn't owe the Plaintiff a duty of care because it "did not create the alleged dangerous condition or create a foreseeable zone of risk for the Plaintiff thereby creating a duty." MSJ at 5. According to the Defendant, the "Plaintiff has not produced any record evidence to

create a genuine issue of material fact to show that [the Defendant] created the dangerous condition—blood and ice on the floor—that caused [the] Plaintiff's fall." *Id.* at 7. "[A]s [the] Plaintiff made his deliveries throughout the day," the Defendant went on, "blood and ice drained from the boxes [and] accumulated on the floor of the truck, as they did every day." *Ibid.* "[The Defendant] did not poke holes in the boxes" and "did not allow water to accumulate in the back of the truck throughout the day, Plaintiff did." *Ibid.* The Defendant added that it "had no ability to control the blood and water on the floor when the incident occurred, especially considering that [the Defendant] is a New York company without any employees at or near the Rank Facility." *Id.* at 8. "The only individual from Seabest who was or could have been aware of the condition was the Plaintiff himself," and the Plaintiff "knew of its existence on the floor at the time of his fall." *Ibid.*

*Second*, the Defendant maintained that, "[t]o the extent that [the Defendant] owed the Plaintiff any common law duty [to warn], such a duty was discharged because [the] Plaintiff's knowledge of the blood and water on the truck floor was superior to that of [the Defendant]." *Ibid.* "It is well established," the Defendant continued, "that where a plaintiff's knowledge of a dangerous condition is equal to or greater than that of a defendant, a defendant has no duty to warn." *Ibid.* (citing *Brookie v. Winn-Dixie Stores, Inc.*, 213 So. 3d 1129, 1131 (Fla. 1st DCA 2017)). Moreover, the Defendant said, "the Plaintiff was the person with the most knowledge of the alleged condition because he was the only individual driving the truck," and the Plaintiff "admitted at deposition that he knew that this condition existed every day." *Id.* at 9. The Defendant thus argued that it should be absolved of any duty to warn because, "[e]ven if such a contention were legitimate, the Plaintiff's knowledge was superior to that of anyone from Seabest." *Ibid.*

*Third*, the Defendant insisted that the Plaintiff had failed to show that the Defendant's breach *proximately* caused the Plaintiff's injuries. *Id.* at 10 ("Even though [the] Plaintiff has failed to establish any duty owed by [Defendant], the scenario which led to the Plaintiff's fall in this case is devoid of the

necessary element of a legal proximate cause between any duty and breach on the part of [the Defendant].""). As the Defendant rightly explained, "Florida law maintains that a defendant is not liable for damages suffered by an injured party 'when some separate force or action is the active and efficient intervening cause of the injury [because such] an intervening cause supersedes the prior wrong as the proximate cause of the injury by breaking the sequence between prior wrong and the injury.'" *Id.* at 11 (quoting *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005)). In the Defendant's view, "[a]ny alleged wrong that could reasonably be attributed to [the Defendant] was superseded by [the] Plaintiff for failing to use reasonable care in stepping in the area that he knew was slippery and covered with ice and blood." *Id.* at 10. The Plaintiff's negligence (the Defendant claimed) was thus an "independent intervening cause," which "break[s] the chain of causation stemming from any alleged negligence on behalf of [the Defendant]." *Ibid.*; *see also id.* at 11 ("[A]ny such wrong that could be attributed to [the Defendant] was superseded by the chain of events put into motion by Plaintiff moving boxes all around the rear of the truck throughout the day and allowing liquid to accumulate without addressing [it].").

After the Plaintiff filed its Response in Opposition to the MSJ (the "MSJ Response") [ECF No. 30]—and the Defendant filed its Reply to the Plaintiff's Response in Opposition to the MSJ (the "MSJ Reply") [ECF No. 32]—Magistrate Judge Strauss issued his R&R, in which he bought only the second of the Defendant's arguments.

As to the Defendant's first argument, Magistrate Judge Strauss found that, under a premises-liability theory of negligence, the "Defendant did owe [the] Plaintiff a duty of care" because the "Plaintiff was an invitee of [the] Defendant." R&R at 5. According to Magistrate Judge Strauss, "independent contractor[s] ha[ve] the status of a business visitor, or invitee, upon the premises." *Ibid.* (quoting *Hall v. Holland*, 47 So. 2d 889, 891 (Fla. 1950)). And, while the "Defendant assert[ed] that this duty to invitees is only owed by landowners to those invited onto *real property*," Judge Strauss noted

that "none of [the] cases [the Defendant relied on] offer[ed] thorough analysis, much less a binding, conclusive answer to whether a theory of premises liability, and the consequent duty owed to an invitee, may apply to *personal property.*" *Id.* at 5, 8 (emphases added). Indeed, Magistrate Judge Strauss acknowledged that the cited cases "all suggest that such application [of the premises-liability theory of negligence to a tort that occurred on personal property] is at least plausible in a case like this one." *Id.* at 8. Magistrate Judge Strauss therefore concluded that the "Plaintiff, as an independent contractor, was an invitee and Defendant had a duty 'to use reasonable care in maintaining the [truck] in a reasonably safe condition,' and a 'duty to warn of latent or concealed dangers which are or should be known to' it and which are unknown to Plaintiff and cannot be discovered through the exercise of due care." *Ibid.* (quoting *Grimes v. Fam. Dollar Stores of Fla., Inc.*, 194 So. 3d 424, 427 (Fla. 3d DCA 2016)).

As we've said, the Defendant fared better on its second argument, where Magistrate Judge Strauss found that the "Defendant did *not* owe [the] Plaintiff a duty to warn about the possible harm inside the truck" because the Plaintiff had actual knowledge of the dangerous condition. *Ibid.* (emphasis added). The magistrate judge acknowledged that a "[d]efendant's duty to use reasonable care in maintaining its truck in a reasonably safe condition and to warn of latent or concealed dangers which are or should be known to it as the owner"—two distinct duties—"can be abrogated under certain circumstances." *Ibid.* Specifically, "where the danger is obvious and apparent or the invitee otherwise has knowledge of the danger which is equal to or superior to the owner's knowledge, the owner has no duty to warn of it." *Id.* at 8–9. "However, even if the danger is obvious and apparent, the property owner's duty to maintain the property in a reasonably safe condition remains if the property owner should anticipate the harm despite its obvious and apparent nature." *Id.* at 9. Magistrate Judge Strauss agreed that the Defendant "was absolved of its duty to warn Plaintiff about the danger of slipping and falling on fish blood and other liquids in the back of the truck due to the

condition's obvious and apparent nature." *Ibid*. Still, "[t]hough the evidence presented leaves no doubt that [the] Defendant did not have to warn Plaintiff about the dangerous condition, there is," the magistrate judge explained, "a genuine issue of material fact as to whether Defendant should have anticipated the harm despite its obvious and apparent nature." *Ibid*. Magistrate Judge Strauss therefore suggested that "summary judgment is inappropriate regarding whether Defendant owed, and breached, its duty to maintain its truck in a reasonably safe manner." *Id.* at 11.

On the Defendant's third argument, Magistrate Judge Strauss found that the "Defendant's assertion that [the] Plaintiff's actions were an independent intervening cause that broke the chain of causation stemming from Defendant's negligence is incorrect." *Ibid*. "An independent intervening cause," Magistrate Judge Strauss wrote, "supersedes the prior wrong as the proximate cause of a plaintiff's injury"—but "if the intervening cause is foreseeable, then the original negligent actor could still be liable." *Id.* at 12. Magistrate Judge Strauss thus clarified that, "[i]f [the] Plaintiff's own actions while working in the back of Defendant's truck played a part or led to his injuries, then the amount awarded to [the] Plaintiff as economic and noneconomic damages for his injury would be reduced, but his actions would not bar recovery." *Ibid*. Even under "the principles of Florida's independent intervening cause doctrine," the magistrate judge added, "there remains a factual issue that only the trier of fact can resolve." *Ibid*. "Thus, whether Plaintiff's alleged negligent acts of moving the boxes of fish around in the back of the truck as he made deliveries and allowing the liquid substances to accumulate was unforeseeable, thereby breaking the chain of causation, is a question for the trier of fact to answer." *Id.* at 12–13.

Ultimately, then, Magistrate Judge Strauss recommended that the MSJ be granted in part and denied in part. The Motion should be granted (the magistrate judge thought) "to the extent that [the] Defendant has conclusively established as a matter of law that it did not owe Plaintiff a duty to warn

of the dangerous condition in the back of its truck[.]" *Id.* at 13. But (Judge Strauss went on) "[t]he

Motion should otherwise be denied in all other respects." *Ibid.*

The Defendant advances three objections to Magistrate Judge Strauss's R&R.[4] *First*, the

Defendant says that the doctrine of premises liability applies only to *real* property and thus cannot

form the basis of the Plaintiff's negligence claim here. *See* Def.'s Objs. at 4 ("Florida's premises liability

statute does not apply here, as a matter of both law and fact, because the property on which the subject

fall occurred is not a business establishment or real property."). *Second*, the Defendant argues that it

owed the Plaintiff no duty of care because "it did not create the alleged dangerous condition that

caused Plaintiff's fall." *Ibid.* Alternatively, "to the extent [the Defendant] did owe the Plaintiff a

common law duty to 'lessen the risk or see that sufficient precautions are taken to protect others from

that risk,' such a duty was discharged because the Plaintiff had actual or superior knowledge of the

condition." *Ibid.* (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)). *Third*, the

Defendant re-emphasizes that the "Plaintiff's own conduct created the condition" and that the

Plaintiff's "actions or inactions"—as opposed to the Defendant's—were the "proximate cause of

Plaintiff's injury." *Id.* at 9. We'll address each argument in turn.

## ANALYSIS

## I.      The Defendant's First Objection: The Premises-Liability Doctrine

Although the Defendant spends a great deal of time disputing the applicability of the premises-

liability doctrine to our facts, we don't think the Plaintiff has advanced a premises-liability claim at all.

He didn't mention it in his Complaint. *See generally* Complaint (nowhere mentioning the terms

"premises," "invitee," "business establishment," or the premises-liability statute, FLA. STAT. §

---

[4] We have reordered these for ease of analysis.

12

768.0755[5]). And the Defendant acknowledged as much in its MSJ. *See* MSJ at 9 ("Regardless of the instant case *not being brought under a theory of premises liability*, [the Defendant] did not owe any duty to warn in this common law context." (emphasis added)). In fact, the notion that this case presents a premises-liability claim comes from that same *summary-judgment motion*—in which the Defendant (for the first time in this litigation) mentioned the doctrine and cited a state-court decision addressing its contours. *See ibid.* (quoting *Margrabe v. Graves*, 97 So. 2d 498 (Fla. 1st DCA 1957)). For reasons that aren't entirely clear, the Plaintiff responded to this minor point by claiming (again for the first time) that the Defendant owed him "a duty based on his status as a Business Invitee." MSJ Response at 4–7.

We can—and will—disregard this one line from the Plaintiff's MSJ Response because it's well-settled that a "plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). What matters is the cause of action the Plaintiff has asserted in his Complaint. And—as we've said—the Complaint

---

[5] This statute is entitled "Premises liability for transitory foreign substances in a business establishment," and it provides as follows:

1.  If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

    a.  The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

    b.  The condition occurred with regularity and was therefore foreseeable.

2.  This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

FLA. STAT. § 768.0755.

never refers to the Plaintiff as a business invitee, never mentions the premises-liability doctrine, and never cites the premises-liability statute. In these circumstances, we feel comfortable saying that the Plaintiff hasn't advanced a premises-liability claim at all. So, while we take no position on the merits of Magistrate Judge Strauss's determination that the doctrine *could* apply to our case, we **DO NOT ADOPT** that portion of his R&R.

## II. The Defendant's Second (and the Plaintiff's Only) Objection: Duty

### a. The Defendant owed a duty of care to the Plaintiff.

The Plaintiff has thus asserted nothing more than a single common-law negligence claim against the Defendant. Under Florida law, "[a] negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Wilson-Greene v. City of Miami*, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017) (citing *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015)); *see also Cooper Hotel Servs. Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2d DCA 1995) ("To sustain a cause of action for negligence, the burden of proof is on the plaintiff to establish" all four elements.). As the Florida Supreme Court has explained:

> [T]he question of whether a duty is owed is linked to the concept of foreseeability. We have held that duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case. The fourth category encompasses "that class of cases in which the duty arises because of a foreseeable zone of risk arising from the acts of the defendant."

*Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010) (cleaned up) (quoting *McCain*, 593 So. 2d at 503 n.2). Our case falls into that fourth category.

"Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that risk poses." *McCain*, 593 So. 2d at 503; *see also Whitt v. Silverman*, 788 So. 2d 210, 217 (Fla. 2001) ("recogniz[ing] that a legal duty will arise whenever a human

endeavor creates a generalized and foreseeable risk of harming others" (quoting *McCain*, 593 So. 2d at 503)). And our Plaintiff has shown that the Defendant created a foreseeable risk of harming him here.

The Defendant, after all, hired the Plaintiff to deliver fish by truck across South Florida over the course of long, hot days. *See* Deposition of Seabest's Miami Sales Manager Yamilet Bellido de Luna ("Bellido de Luna Depo.") [ECF No. 29-1] at 9:4–10 (Q: "And do you remember approximately when Mr. Gonzalez started working for Seabest?" . . . A: "In June 2020, he started working for us."); Venturo Depo. at 9:17–25 ("[Rank] will ice the fish. They made all the orders that the salesperson sells during the day, during the morning. And they load the truck again. And then the driver has to make deliveries, all the stops that he has. If he ha[s] six deliveries, he has to finish all the deliveries. That's it."); Deposition of Jorge Gonzalez ("Gonzalez Depo.") [ECF No. 26-2] at 69:13–18 (Q: "How long was a usual day for you driving for Seabest?" A: "There were some times I would start at 6:00 in the morning and I would finish like by 5:00 p.m."). As the day wore on, water and blood would drain out of the punctured, Styrofoam boxes of fish onto the floor of the truck. *See* Venturo Depo. at 40:13–21 (Q: "[W]hat gets placed into those boxes besides the fish?" A: "Ice and fish." Q: "Do you know if the boxes have any kind of ability to drain the ice once it melts?" . . . A: "Rank do a little hole in each box to drain the ice."); Deposition of Seabest Corporate Representative Robert Sudano ("Sudano Depo.") [ECF No. 29-2] at 17:2–19 (Q: "Do you know if anyone . . . at Rank . . . make[s] any kind of holes in the boxes or anything like that?" A: "Yeah. . . . They poke holes in boxes . . . for drainage of water."); Gonzalez Depo. at 121:8–20: (Q: "After you slipped, did you see what caused you to slip?" . . . A: "Blood and water. That's the only thing that comes out of the fish boxes.").

Despite the accumulation of blood and water, the Plaintiff had to walk across the truck's floor throughout the day. *See* Gonzalez Depo. at 68:1–9 (Q: "So you would walk into the back of the truck?" A: "Yes." . . . Q: "And then you would physically lift the boxes and move them off the truck to be delivered?" A: "Yes, correct."). The truck's floor, the Plaintiff's expert testified, "was inadequate based

on the type of cargo [the Defendant] expected to carry and created a safety risk for its delivery drivers." Brooks Rugemer Affidavit [ECF No. 29–3] ¶ 5. Indeed, the Plaintiff likened the flooring to "Formica." Gonzalez Depo. at 120:22–24. And the Defendant knew *both* that the Plaintiff had concerns about the slipperiness of the truck floor, *see* Gonzalez Depo. at 77:13-16 ("I told [Yamilet Bellido de Luna] on many occasions that [the floor of the truck] was a little bit dangerous."), *and* that another driver had already slipped on the same floor, doing the same work, in the same kind of truck, *see* Veloz Affidavit at 1 ("On several occasions, I slipped and fell inside the truck. I notified Claudia Venturo of these falls and informed her about the slippery floor. They never did anything about it.").

Unsurprisingly, Florida law is clear that employers have a legal duty to provide adequately safe equipment to their employees. *See, e.g.*, *Callahan v. Bryce*, 47 So. 2d 517, 518 (Fla. 1950) ("The master is by law required to furnish his employee reasonably safe machinery, appliances and instrumentalities with which to work."); *Hancock v. Dep't of Corr.*, 585 So. 2d 1068, 1071 (Fla. 1st DCA 1991) ("Generally, a master or employer has an affirmative duty to provide his servants or employees with reasonably safe instrumentalities and places to work."); *Dearing v. Reese*, 519 So. 2d 761, 762–63 (Fla. 1st DCA 1988) (noting than an employer owed his employee "a duty to provide [the employee] a safe place in which to work, reasonably safe machinery, tools and implements to work with, and suitable and competent fellow servants to work with him"). And the same duties apply to independent contractors. *See Benitez v. Joseph Trucking, Inc.*, 68 So. 3d 428, 431 n.1 (Fla. 5th DCA 2011) (noting that, "[b]y providing [the plaintiff-contractor] with the equipment to perform the contracted-for work, [the defendant] assumed a duty to exercise ordinary and reasonable care under the circumstances to supply equipment that would be reasonably safe and suitable"); *Tillery v. Standard Sand & Silica Co.*, 226 So. 2d 842, 845 (Fla. 2d DCA 1969) ("Where the employer undertakes to furnish his own employee, or those of an independent contractor, some of the implements or instrumentalities for executing the required work, he thereby assumes a duty to exercise ordinary and reasonable care, measured by the

surrounding circumstances, to provide such instrumentalities as will be reasonably safe and suitable." (quoting *Green v. Sansom*, 25 So. 332, 103 (Fla. 1899))).

For example, in *Noel v. M. Ecker & Co.*, a carpenter brought a negligence action—arising from an injury he suffered while operating a nail gun—against the subcontractor company that gave him his tools. *See* 445 So. 2d 1142, 1143 (Fla. 4th DCA 1984). The carpenter alleged that the subcontractor "negligently assigned a T-Nailer to [the carpenter] where it was known or should have been known that the continued and regular use of the T-Nailer without some protection for the user's ears could or would result in hearing impairment." *Ibid.* At trial, the circuit court entered a directed verdict for the subcontractor-defendant, but the Fourth District Court of Appeal ("DCA") reversed, reasoning that, "since [the subcontractor-defendant] undertook to supply construction equipment to be used by [the carpenter-plaintiff], it *assumed a duty* to exercise ordinary and reasonable care under the circumstances *to supply such instrumentalities as will be reasonably safe and suitable*." *Id.* at 1144 (emphasis added).

Likewise, in *Benitez v. Joseph Trucking*, a truck driver sued a trucking company (for whom he was working as an independent contractor) after sustaining injuries in a single-vehicle crash. *See* 68 So. 3d at 429. According to the driver-plaintiff, the trucking company "owed a duty" to "maintain the tractor-trailer in a proper working condition[.]" *Id.* at 430. The defendant (the plaintiff said) had breached this duty by providing him with a truck that was "unsafe because it had been negligently maintained" by the trucking company. *Ibid.* The trial court granted the trucking company's "motion for directed verdict" after concluding that the evidence "was insufficient to establish a nexus or causal connection between the alleged defective condition of the trailer and the crash." *Ibid.* Again, however, the Fifth DCA reversed, noting that the "evidence was hotly disputed." *Ibid.* Along the way, the court rejected the trucking company's "suggestion that [it] had no legal duty to provide [the truck driver] with a safe vehicle." *Id.* at 431 n.1. "By providing [the plaintiff] with the equipment to perform the

contracted-for work," the court explained, the trucking company "*assumed a duty* to exercise ordinary and reasonable care under the circumstances *to supply equipment that would be reasonably safe and suitable*." *Ibid.* (emphasis added) (citing *Noel*, 445 So. 2d at 1144).

Like the defendants in *Noel* and *Benitez*, our Defendant owed the men and women who operated its trucks (in furtherance of its fish-distribution business) a duty to exercise ordinary and reasonable care under the circumstances. That duty included the obligation to supply its drivers with safe equipment and tools. Specifically, because our Defendant hired the Plaintiff to transport fish—packaged in melting ice that, as the day went on, flooded the trucks' floors—our Defendant owed the Plaintiff a duty to provide a truck that was adequately designed for this work.

In its Objections, the Defendant insists that it "did not owe Plaintiff *any* duty of care as it did not *create* the alleged dangerous condition that caused Plaintiff's fall." Def.'s Objs. at 4 (emphases added). In other words, the Defendant believes that it was not its own "actions . . . which created the condition of water or blood to accumulate on the truck floor," but rather the "Plaintiff's own conduct [that] created the condition." *Id.* at 9.

But Florida law doesn't require proof that the defendant *created* the dangerous condition. It simply requires a showing that the "defendant's conduct create[d] *a foreseeable zone of risk*[.]" *McCain*, 593 So. 2d at 503 (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989)). Once the plaintiff has done that, "the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that risk poses." *Ibid.* (cleaned up); *see also Whitt*, 788 So. 2d at 217 ("recogniz[ing] that a legal duty will arise whenever a human endeavor creates *a generalized and foreseeable risk* of harming others" (emphasis added) (quoting *McCain*, 593 So. 2d at 503)). And, as we've said, the Plaintiff has done enough to show that the Defendant created a "foreseeable zone of risk" by (1) hiring truck drivers to drive around South Florida with trucks full of melting ice and fish blood, *see* Venturo Depo. at 9:13–25 (A: "You want me to explain [what] the

handling and processing is or—?" Q: "Sure. Yes please." A: "Okay. The handling processing is: We unload [from] the truck [the fish that just arrived via airplane]. [Rank] will ice the fish. They made all the orders that the salesperson sells during the day, during the morning. And they load the truck again. And then the driver has to make deliveries, all the stops that he has."); (2) knowing that Rank would be poking holes in the fish-filled boxes so that melting ice could drain out, *see id.* at 40:13–21 (Q: "[W]hat gets placed into those boxes besides the fish?" A: "Ice and fish." Q: "Do you know if the boxes have any kind of ability to drain the ice once it melts?" . . . A: "Rank do a little hole in each box to drain the ice."); *see also* Sudano Depo. at 17:2–18:13 (Q: "Do you know if anyone . . . at Rank . . . make[s] any kind of holes in the boxes or anything like that?" A: "Yeah. . . . They poke holes in boxes . . . for drainage of water. . . . If there's any melt of ice from the point of Rank warehouse to the customer, you don't want water in boxes." Q: "And why is that?" A: "Well, fish do not do well floating in water, so you want ice only. So you would poke a hole in the box. If there's any meltdown, it would drip out of the bottom."); (3) without installing a drainage system (to keep the floor dry) or floor matting (to reduce the floor's slipperiness), *see* Gonzalez Depo. at 120:22–24 (comparing the floor to "Formica"); Rugemer Affidavit ¶ 5 (describing the flooring as "inadequate based on the type of cargo"); (4) while understanding that this combination of melting ice and slippery floors had created dangerous conditions for truck drivers in the past, *see* Gonzalez Depo. at 77:13–16 ("I told [Yamilet Bellido de Luna] on many occasions that [the floor of the truck] was a little bit dangerous."); *see also* Veloz Affidavit at 1 ("On several occasions, I slipped and fell inside the truck. I notified Claudia Venturo of these falls and informed her about the slippery floor."). Unfortunately, according to Mr. Veloz, the Defendant, despite knowing about all these risks, "never did anything about it." Veloz Affidavit at 1.

  In these circumstances, we have little trouble concluding that the Plaintiff has done more than enough to get to the jury on his view that the Defendant's conduct "create[d] *a foreseeable zone of risk*[.]"

*McCain*, 593 So. 2d at 503 (quoting *Kaisner*, 543 So. 2d at 735). We therefore **OVERRULE** this part of the Defendant's second objection.

> **b.  The Plaintiff's actual knowledge of the hazard abrogated the Defendant's duty to warn but not its duty to provide an adequate truck.**

The Defendant next objects that, "to the extent [it] did owe the Plaintiff a common law duty to 'lessen the risk or see that sufficient precautions are taken to protect others from that risk,' such a duty was discharged because the Plaintiff had actual or superior knowledge of the condition." Def.'s Objs. at 4 (quoting *McCain*, 593 So. 2d at 503). The Plaintiff counters that "[this] argument can only be a basis to relieve Defendant of its duty to warn, not of its duty to maintain." Pl.'s Objs. Resp. at 2. This is an odd concession by the Plaintiff, since it contradicts *his* lone objection—*viz.*, that Magistrate Judge Strauss "erred" in "finding that the Defendant was not required to give a warning to Plaintiff regarding the dangerous condition in the back of his truck." Pl.'s Objs. at 1. Ultimately, both sides' objections fail because the Plaintiff's actual knowledge of the hazard abrogated the Defendant's duty to warn—but not its duty to provide an adequate truck.

Let's start with the Defendant's duty to warn. According to Judge Strauss, the Defendant "did not have a duty to warn of the danger of slipping and falling in the back of the truck due to the fish blood and other liquids because that danger was obvious and apparent, and Plaintiff knew of the danger that was present." R&R at 10. In his Objection, the Plaintiff says only that "the warning required from Defendant to Plaintiff was that of an *inadequate flooring system* which made the work he was required to do more dangerous and hazard[ous] than normal: a condition that is not readily apparent." Pl.'s Objs. at 2 (emphasis added). In other words, the Plaintiff doesn't seem to be challenging the proposition that an employer has no duty to warn of a hazard the employee—or independent contractor—already knows about. *See Callahan*, 47 So. 2d at 518 ("It is the duty of the master to exercise such ordinary and reasonable care as prudence and the exigencies of the situation require, in providing the servant with safe machinery and suitable instrumentalities for his work, and

in *notifying the servant of any defects or risks which the servant does not know*." (emphasis added) (quoting *German-American Lumber Co. v. Brock*, 46 So. 740, 743 (Fla. 1908))); *Fla. Power & Light Co. v. Robinson*, 68 So. 2d 406, 412 (Fla. 1953) ("[T]he rule requiring warning of danger does not require warning . . . where [the employee] is *put on notice* of possible danger[.]" (emphasis added)). Instead, the Plaintiff is suggesting that Magistrate Judge Strauss was focused on the wrong hazard—the water and the blood rather than the inadequate flooring.

We don't think Magistrate Judge Strauss was confused about any of this. Whether the danger was blood and water—or blood and water on an inadequate surface—the evidence is undisputed that the Plaintiff was keenly aware of it. He, in fact, *admitted* that he had "slipped *on many occasions* [in that same truck] . . . and the other driver fell two or three times inside the truck." Gonzalez Depo. at 77:14–16 (emphasis added). And he "told [Yamilet Bellido de Luna] *on many occasions* that [the back of the truck] was a little bit dangerous." *Id.* at 77:13–14 (emphasis added). Veloz—the other driver—knew about the dangerous condition of the truck floor, too. *See* Veloz Affidavit ("On several occasions, I slipped and fell inside the truck. I notified Claudia Venturo of these falls and informed her about the slippery floor."). Because the Plaintiff *knew* that the back of the truck was dangerous long *before* he fell, the Defendant didn't owe a duty to warn him of that danger. *See Co-operative Sanitary Baking Co. v. Shields*, 70 So. 934, 934 (Fla. 1916) ("It is the duty of the master to use due diligence in providing a reasonably safe place for the servant to work in, and also to inform the servant of any dangers in the employment that are *not of such a character that the servant should know of them*[.]" (emphasis added)).

In *Miller v. Wallace*, for example, a farmhand sued the farm owner for, among other things, negligent failure to warn after he was "injured when the branch of an orange tree . . . came through the open window of the truck he was driving, striking him in the eye." 591 So. 2d 971, 972 (Fla. 5th DCA 1991). After the jury returned a verdict for the farmhand, the owner appealed. *Ibid.* The Fifth DCA reversed, noting that the "uncontradicted record . . . establish[ed] . . . that the plaintiff himself

was *fully aware of the danger* of driving through the thorny branches," since he had driven the same route before and had experienced the same "slap[ping]" of branches along the side of the truck. *Id.* at 973. In these circumstances, the Fifth DCA said, the plaintiff "could not recover from defendant based upon a theory of failure to warn." *Ibid.* Just as the farmhand in *Miller* knew that thorny branches would strike his vehicle when he followed that trail, so too did our Plaintiff (by his own admission) *know* about the dangerous condition in the back of the truck. Our Plaintiff's knowledge, then, abrogated the Defendant's duty to warn him of that danger.

But the Plaintiff's knowledge *didn't* vitiate the Defendant's duty to furnish him with a work environment that was safe given the foreseeable risks. That was the holding of *Hancock v. Department of Corrections*, 585 So. 2d 1068 (Fla. 1st DCA 1991), where an inmate "was injured while descending a stairway at the institution's sewer treatment plant where he worked." *Id.* at 1070. As the inmate-plaintiff began to slip on the stairway, he tried to stop his fall by grabbing the "handrail," which "just gave way." *Ibid.* The inmate-plaintiff sued "the Department alleging, among other things, that the Department's negligence in failing to repair the handrail was the proximate cause of his injuries." *Ibid.* The trial court granted summary judgment for the defendant on the ground that the inmate-plaintiff's "knowledge of the defect was superior to its own," since he had—months before the fall—reported the poor state of the handrail to the department. *Ibid.* The Third DCA reversed, holding (as we do here) that "[a]n employer has a duty to use ordinary care and diligence to keep the workplace safe, taking into consideration the exigency of the circumstances and the character of work to be done." *Id.* at 1071. "As the owner and operator of the premises with knowledge of the condition of the broken handrail," the court went on, "the Department also owed a duty to persons such as [the inmate-plaintiff] to protect them from *reasonably foreseeable risks*, even *though he was aware of the dangerous condition.*" *Ibid.* (emphases added). "[S]o," the court concluded, "although [the inmate-plaintiff's] knowledge of the defective stairway could discharge the Department's duty to warn, such knowledge did not

discharge the Department's duty to maintain the premises in a reasonably safe condition by correcting dangers of which it had actual or constructive knowledge." *Ibid.*

This was also the Third DCA's view in *Westberry v. Great Atlantic and Pacific Tea Co.*, where "an employee of the defendant[ ] was injured on the defendant's premises when she slipped and fell on the produce workroom floor while returning from the ladies room." 191 So. 2d 613, 613 (Fla. 3d DCA 1966). The plaintiff had taken the "more direct of two routes"—the one that went through the produce room. *Id.* at 614. "For approximately six months prior to the accident, the produce workroom floor had been continually littered with vegetable and fruit materials," and the plaintiff, "who had made an average of three trips a day to the ladies' room via this route, was undoubtedly familiar with the conditions." *Ibid.* Despite this awareness, the plaintiff fell on "what she believed to be a grape." *Ibid.* At the end of the plaintiff's case at trial, the court "directed a verdict for the defendant." *Ibid.* Again, however, the Third DCA reversed, noting that it was "unable to conclude that a jury could not reasonably infer in this case that [the plaintiff's] accident was proximately caused by the negligence of the defendant-employer." *Ibid.* In the Third DCA's view, it was the employer's duty "to see that the place [of business] is reasonably safe for the purpose and use for which it is intended, and to protect his employees against such perils as are either known or which could be known and remedied in the exercise of reasonable care." *Ibid.*

Our case is very similar. Like the plaintiffs in *Hancock* and *Westberry*, our Plaintiff knew about the dangerous condition in his workplace. Indeed, as in *Hancock*, our Plaintiff had even warned his employer about this danger. Nevertheless, as in those cases, we cannot "conclude that a jury could not reasonably infer . . . that [the Plaintiff's] accident was proximately caused by the negligence of the defendant-employer," because (irrespective of the Plaintiff's knowledge) it remains the employer's duty "to see that the place [of business] is reasonably safe for the purpose and use for which it is

intended, and to protect his employees against such perils as are either known or which could be known and remedied in the exercise of reasonable care." *Ibid.*[6]

We therefore **OVERRULE** both the Defendant's and the Plaintiff's objections to this part of the R&R.

### III.    The Defendant's Third Objection: Breach and Causation

Although the Defendant couches its third objection *exclusively* in the language of proximate cause, it advances arguments on both breach and causation. *See* Def.'s Objs. at 8–9 (asserting (1) that the Defendant provided the Plaintiff with a "dry truck every morning," and (2) that it was the "Plaintiff's own conduct [that] created the [hazardous] condition"). So, we'll address each in turn.

### a.   Breach

A plaintiff establishes that a defendant breached a legal duty by showing that the defendant "fail[ed] to conform" to a "certain standard of conduct." *Martin v. City of Tampa*, 351 So. 3d 75, 77 (Fla. 2d DCA 2022). And, "[i]n a negligence action, whether a defendant exercised reasonable care

---

[6] For two reasons, we won't follow the related line of Florida cases in which a plaintiff's knowledge of the dangerous condition *did* vitiate the defendant's duty of reasonable care. *One*, our case (and the decisions we've cited) implicates an *employer's* duty to provide a reasonably safe work environment to its workers. That distinguishes our facts from the landscape of premises-liability cases in which courts have found that an invitee-plaintiff's knowledge of the dangerous condition abrogated the defendant's duty. *See, e.g.*, *Brookie*, 213 So. 3d at 1131 ("We hold here that Appellees did not violate any legal duty to Appellant, who observed the condition but was injured by failing to use due care for his own safety[.]"); *Morris v. Pep Boys—Manny, Moe, and Jack, Inc.*, 2021 WL 5026841, at *2 (N.D. Fla. May 20, 2021) (Vinson, J.) (granting summary judgment for the defendant where the plaintiff "s[aw] the purportedly dangerous or unsafe condition but fail[ed] to successfully navigate it" (emphasis added)). *Two*, because of the very specific nature of our Plaintiff's work—which placed him in a truck whose floors became, throughout the long day, *fully* soaked in melting ice and blood—our Plaintiff (unlike the plaintiffs in these other cases) had *no opportunity* to avoid the dangerous condition. *See, e.g.*, *ibid.* ("We hold here that Appellees did not violate any legal duty to Appellant, who observed the condition but was injured by failing to use due care for his own safety, when a reasonable person *could have easily avoided the obstacle* and thereby prevented injury." (emphasis added)); *Jackson v. Holiday CVS, LLC*, 2020 WL 13368701, at *2 (M.D. Fla. Sept. 3, 2020) (Moody, J.) (granting summary judgment for the defendant because the plaintiff "repeatedly walked around the pallet," which "demonstrates she saw it and knew it was there, that it was open and obvious—not just in general, but to her specifically— and that she *knew how to navigate around it safely*" (emphasis added)).

under a given set of facts is generally an issue for the jury to decide." *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 105–06 (Fla. 4th DCA 2017) (quoting *L.A. Fitness Int'l, LLC v. Mayer*, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); *Limones v. Sch. Dist. of Lee Cnty.*, 161 So. 3d 384, 390 (Fla. 2015) ("[I]t is for the jury to determine whether, under the relevant circumstances, the [defendant] has acted unreasonably and, therefore, breached the duty owed.").

Our Plaintiff has created a genuine dispute of material fact on the issue of breach—thus precluding summary judgment on that element. *See Hilliard v. Speedway Superamerica LLC*, 766 So. 2d 1153, 1155 (Fla. 4th DCA 2000) (concluding that the existence of a "material issue of fact" on the element of breach "preclude[d] summary judgment"). The Plaintiff has adduced evidence for his view that the truck was not equipped with rubber matting (to make the floors less slippery) or a drainage system to keep the floors dry. *See* Gonzalez Depo. at 120:22–24 (comparing the truck's flooring to "Formica"); Rugemer Affidavit ¶ 5 (describing the flooring as "inadequate based on the type of cargo [the Defendant] expected to carry"). The Defendant, of course, disputes all this evidence, insisting that the truck was equipped with "a skid-proof floor," Sudano Depo. at 20:4–5, and that "the driver [was] responsible for the cleaning of the truck," Bellido de Luna Depo. at 16:11–12. At summary judgment, however, we must accept the Plaintiff's version of the facts and draw all reasonable inferences in his favor. We'll therefore leave the resolution of this contested factual question to the jury, *see Vincent v. C.R. Bard, Inc.*, 944 So. 2d 1083, 1086 (Fla. 2d DCA 2007) (finding that, because "a genuine issue of material fact remain[ed] whether [the defendant] breached its duty to [the plaintiff], . . . it was error for the trial court to enter summary judgment in favor of [the defendant]").

### b. Proximate Cause

Finally, we agree with Magistrate Judge Strauss that there "remains a factual issue that only the trier of fact can resolve" as to "whether Plaintiff's alleged negligent acts of moving the boxes of fish around in the back of the truck as he made deliveries and allowing the liquid substances to accumulate

was unforeseeable, thereby breaking the chain of causation[.]" R&R at 12. Under Florida law, "though a person's negligence is a cause in fact of another's loss, he will not be liable if an act unforeseeable to him and independent of his negligence intervenes to also cause the loss." *Nicholas v. Miami Burglar Alarm Co.*, 339 So. 2d 175, 177 (Fla. 1976). In other words, "[t]he law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." *Goldberg*, 899 So. 2d at 1116 (quoting *McCain*, 593 So. 2d at 503).

But where "an intervening cause is foreseeable the original negligent actor may still be held liable." *Ibid.* (quoting *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So. 2d 520, 522 (Fla. 1980)). Proximate cause, then, "is generally a question of fact concerned with 'whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred.'" *Ibid.* (quoting *McCain*, 593 So. 2d at 502). And, "[w]here reasonable persons could differ as to whether the facts establish proximate causation, the issue must be left to the fact finder." *Ibid.*; *see also Sanders v. ERP Operating Ltd. P'ship*, 157 So. 3d 273, 277 (Fla. 2015) ("Whether or not proximate causation exists is a question of fact, involving an inquiry into whether the [defendant's] breach of duty foreseeably and substantially contributed to the plaintiff's injuries.").

As Magistrate Judge Strauss explained, the Plaintiff has done more than enough to create a genuine issue of fact on the element of proximate causation. It's true that, as a regular part of his job, the Plaintiff moved boxes around the back of the truck as he made his deliveries. *See* Gonzalez Depo. at 68:14-17 (Q: "So is it fair to say that throughout the day, while you're making deliveries, you're also rearranging the location of the boxes on the trailer?" A: "Yes, correct."). It's also true that these boxes dripped water and blood. *See id.* at 72:11–13 ("[Rank] would poke holes in the boxes so it would drip the blood, so that would accumulate throughout the day."); *id.* at 95:14–16 ("As the day progressed, the floor would get worse. There was more ice and blood, water on it."). But the Defendant *understood* that blood and water would accumulate on the floor of the truck. *See* Venturo Depo. at 40:20–21

(admitting that "Rank do a little hole in each box to drain the ice."); Sudano Depo. at 17:2–19 (Q: "Do you know if anyone . . . at Rank . . . make[s] any kind of holes in the boxes or anything like that?" A: "Yeah. . . . They poke holes in boxes . . . for drainage of water."). And the Defendant *knew* that one of its truck drivers had slipped and fallen inside its trucks several times before. *See* Veloz Affidavit ("On several occasions, I slipped and fell inside the truck. I notified Claudia Venturo of these falls and informed her about the slippery floor."). Indeed, the Defendant had been on notice that the trucks were slippery and dangerous for some time. *See* Gonzalez Depo. at 77:11–14 (Q: "Were you ever concerned that the inside of the back of the truck was dangerous for you?" A: "I told [Yamilet Bellido de Luna] on many occasions that it was a little bit dangerous."). Despite this knowledge, the Defendant (Veloz claims) failed to protect its drivers by installing a proper drainage system (to keep the floor dry) or laying down rubber mats (to help with footing). *See* Veloz Affidavit at 1 ("They never did anything about [the dangerous condition of the truck's floors]."). And the Plaintiff's expert has corroborated this view. *See* Brooks Rugemer Affidavit ¶ 5 (noting that the truck's floor "was inadequate based on the type of cargo [the Defendant] expected to carry and created a safety risk for its delivery drivers"). Since this dispute squarely presents "a question of fact concerned with 'whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred,'" *Gibson*, 386 So. 2d at 522 (quoting *McCain*, 593 So. 2d at 502), we'll follow Florida law and leave this important issue "to the fact finder," *ibid.*

We also agree with Magistrate Judge Strauss that the Defendant's proximate-cause contention is just a rephrasing (inappropriate at this preliminary phase of the case) of the doctrine of comparative fault. As Judge Strauss explained, "[i]f Plaintiff's own actions while working in the back of Defendant's truck played a part or [led] to his injuries, then the amount awarded to Plaintiff as economic and non-economic damages for his injury would be reduced, but his actions would not bar recovery." R&R at

12 (citing FLA. STAT. § 768.81(2));[7] *see also Birge v. Charron*, 107 So. 3d 350, 357 (Fla. 2012) ("Based on [FLA. STAT. § 768.81(2)], it is clear that Florida's system of comparative negligence was implemented for the express purpose of allowing recovery in negligence cases based on *a jury's* allocation of comparative fault—on a percentage basis—among all individuals who were negligent in bringing about an injury." (emphasis added)); *Noel*, 445 So. 2d at 1144 ("[O]f course, any knowledge on the part of the [injured employee] concerning the dangerous condition raises an issue of comparative negligence."). And, because the "apportionment of fault between the plaintiff and a defendant under comparative negligence is a contested issue, it is the trier of fact that must do the apportioning, not the judge deciding a legal issue." *Pearce v. Deschesne*, 932 So. 2d 640, 642 (Fla. 4th DCA 2006).

We therefore **OVERRULE** the Defendant's Objections on the elements of breach and proximate cause.

* * *

After careful review, then, we hereby **ORDER and ADJUDGE** as follows:

---

[7] "In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery[.]" FLA. STAT. § 768.81(2). On March 24, 2023, Florida added subsection (6) to § 768.81. That new subsection provides that a plaintiff who was more than fifty-percent at fault cannot recover anything from the defendant. *See* FLA. STAT. § 768.81(6) ("In a negligence action to which this section applies, any party found to be greater than 50 percent at fault for his or her own harm may not recover any damages."). In other words, Florida changed from a pure comparative-negligence to a modified-comparative-negligence system. *Cf. Est. of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1242 (M.D. Fla. Apr. 10, 2009) (Fawsett, J.) (noting, in a case adjudicated *before* the enactment of subsection (6), that "Florida recognizes a 'pure comparative negligence' system, meaning that a jury should apportion fault between the plaintiffs, defendant, and any non-party tortfeasors" (quoting *Williams v. Davis*, 974 So. 2d 1052, 1061 n.10 (Fla. 2007))); *see also id.* at 1242 (defining "modified comparative negligence" as a "scheme that bars a plaintiff's right of recovery when the plaintiff's negligence is greater than the combined negligence of the parties and non-parties that caused the plaintiff's injury"). But this change only applies to cases filed *after* March 24, 2023, *see* CH. 2023-15 FLA. LAWS § 30 ("Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act."), so our case—filed in 2022—is unaffected by it.

1.      The Report and Recommendation [ECF No. 37] is **ACCEPTED and ADOPTED in part**, as we've outlined in this Order.

2.      The Defendant's Motion for Summary Judgment [ECF No. 25] is **GRANTED** in part as to the Plaintiff's duty-to-warn claim. The motion is **DENIED** in all other respects.

3.      The **Clerk of Court** shall **REOPEN** this case. An amended scheduling order will follow.

**DONE AND ORDERED** in the Southern District of Florida on August 7, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record